UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARI PEARCE, *et al.*

                              Plaintiffs,

              -v-

MANHATTAN BOOKKEEPERS, INC,
*et al.*

                              Defendants.

24-CV-10017 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Kari Pearce and KP Fitness, LLC (collectively, "Plaintiffs") bring this action

against Smarter Wayz Group, Inc. ("SWG").  Plaintiffs allege that SWG falsified commission

statements showing money earned for Pearce's work for non-party M. Gordon Publishing Group,

Inc. ("MGPG").  (*See generally* ECF No. 54 ("FAC").)  Specifically, the First Amended

Complaint ("FAC") alleges that SWG engaged in: (1) conversion; (2) aiding and abetting

conversion; (3) aiding and abetting fraud and fraudulent concealment; and (4) conspiracy to

commit fraud, fraudulent concealment, and conversion.

Before the Court is SWG's motion to dismiss the FAC for lack of personal jurisdiction

(ECF No. 63) and accompanying memorandum of law (ECF No. 64).  For the reasons that

follow, SWG's motion to dismiss is granted pursuant to Rule 12(b)(2) of the Federal Rules of

Civil Procedure.

I.      **Background**

       A.      **Factual Background**

The following facts are taken from Plaintiffs' FAC and are presumed true for the

purposes of this opinion.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

1

Pearce is a professional athlete who creates a variety of gymnastics, Cross Fit, and fitness videos. (FAC ¶ 1.)  In 2013, Pearce move to New York City, where she lived for seven years, before moving to Las Vegas in June 2020.  (*Id.*)  Between August 2018 and May 2023, Pearce was in a contractual relationship with non-parties MGPG and its CEO Laurence Connors ("Connors"). (*Id.* ¶ 31.)  Per contract, Pearce advised MGPG on the development of media products, including fitness videos for online purchase.  (*Id.*)  In May 2023, MGPG terminated its contract with Pearce.  (*Id.*)  Various issues arose during and following the termination of the contract.  (*Id.*) However, pursuant to the contractual agreement between MGPG and Pearce, the parties arbitrated their contract dispute out of court.  (*Id.* ¶¶ 33, 52.)

The issue now before this Court relates to the bookkeeping of monies owed to Plaintiffs for work with MGPG during the duration of Pearce's contractual relationship with MGPG.  (*See generally* FAC.)  Plaintiffs assert that, until May 2023, they were not provided consistently with documentation showing how commissions were calculated for their work with MGPG.  (*Id.* ¶ 35.)  In 2019, Plaintiffs received, at most, two to three quarterly statements of payments[1] for work with MGPG.  (*Id.*)  Plaintiffs did not receive any further statements until April 25, 2023, upon Plaintiffs' request.  (*Id.* ¶¶ 35, 39.)  During the term of the August 2018 Contract, MGPG's gross revenues on products developed by Pearce exceeded $13 million.  (*Id.* ¶ 36.)  Plaintiffs received approximately $1.5 million in commissions, which amounted to 25% of net sales.  (*Id.*) In January 2021, Plaintiffs' commission was reduced to 20%.  (*Id.*)  The largest expense MGPG disclosed was Facebook advertising costs, which exceeded $3 million.  (*Id.*)

---

[1] The payments were initially made payable to Pearce, but in November 2020, Pearce formed KP Fitness, LLC for the purpose of receiving the payments and the payments were thereafter paid to KP Fitness, LLC.  (FAC ¶ 35 n.1.)

In March 2021, MGPG hired SWG's principal Raul Pallares to provide consulting services.  (*Id.* ¶ 37.)  In the spring of 2023, SWG was involved in preparing the commission statements Plaintiffs requested, as was Manhattan Bookkeepers and three Manhattan Bookkeepers representatives—Kyle Morris, Michael Hoover, and Michelle Hoover.  (*Id.* ¶¶ 37, 38.)

Plaintiffs allege that SWG, Manhattan Bookkeepers, and MGPG "worked together and agreed in April 2023 to create and compile false compensation statements for Pearce, covering the approximately four years duration of the August 2018 Contract."  (*Id.* ¶ 38.)  These allegedly "falsely created commission statements were produced to Pearce's attorney on about April 25, 2023, . . . with the intention of misleading Pearce as to the manner and method used to calculate Pearce's compensation payments made to her during the prior contract period of four years."  (*Id.* ¶ 39.)  This entailed a "plan formed to create in April 2023 the compensation/'commission statements' based on a mix of deductions that were comprised of certain advertising expense deductions agreed to by Pearce, as well as many deductions never discussed with, or agreed to by, Pearce, to be taken from her pay over the four years."  (*Id.* ¶ 41.)  According to Plaintiffs, the plan among SWG, Manhattan Bookkeepers, MGPG, Connors, and Pallares included an agreement "to conceal the electronic metadata of the created '[]commission statements' in order to conceal actual drafting and creation dates which took place during April 2023."  (*Id.* ¶ 42.)

The FAC includes emails from April 2023, which, according to Plaintiffs, show the alleged conspiracy.  (*Id.* ¶¶ 43-47.)  Plaintiffs attached emails showing that SWG used the so-called "KP Formula," which, according to Plaintiffs, is not the calculation that was agreed to in her contract with MGPG to determine her proper compensation payments.  (*Id.* ¶ 46.)  Rather, in Kyle Morris's email to Pallares, Connors, and Michael Hoover, Kyle Morris stated that he "went

3

through and changed the [KP Formula] so it just takes rev[enue] – [minus] deductions x [times] commission percentage for all months." (*Id*. ¶ 47.)  According to Plaintiffs, Kyle Morris's alteration of the KP Formula was clearly intended to conceal the previously agreed-upon version of the KP Formula between MGPG and Pearce.  (*Id*.)

### B.    Procedural History

On December 30, 2024, Plaintiffs commenced this litigation against SWG, Manhattan Bookkeepers, Kyle Morris, Micheal Hoover, and Michelle Hoover.  (ECF No. 1.)  SWG is the only remaining defendant in this action.  On February 28, 2025, SWG filed its motion to dismiss the complaint.  (ECF No. 32.)  On March 12, 2025, the Court granted Plaintiffs' request to file an amended complaint (ECF No. 47), and Plaintiffs filed their FAC on April 1, 2025 (ECF No. 54).  On May 5, 2025, SWG filed a motion to dismiss the FAC pursuant to Rule 12(b)(2) and Rule 12(b)(6).  (ECF No. 63.)[2]

## II.    Legal Standard

On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Where the parties have not engaged in discovery, as here, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a prima facie showing that jurisdiction exists.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).  Such a showing is made where the plaintiff's "own affidavits and supporting materials[] contain[] an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *S. New England Tel. Co. v. Global NAPs Inc.*, 624

---

[2] Upon SWG's filing of its motion to dismiss Plaintiffs' FAC, the Court denied SWG's first motion to dismiss the initial complaint as moot.  (ECF No. 71.)

F.3d 123, 138 (2d Cir. 2010).  On a Rule 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [its] favor," *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), and must accept the allegations in the complaint as true "to the extent they are uncontroverted" by defendants' affidavits, "which the district court may also consider," *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019).

The Court need not, however, "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted).  Thus, "[t]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported.'" *Sullivan v. Jersey Strong Licensing LLC*, No. 18-CV-7753, 2019 WL 3066492, at *2 (S.D.N.Y. July 12, 2019) (alterations and citation omitted).

III.    **Discussion**

Plaintiffs argue that SWG is subject to the jurisdiction of this Court under 35 N.Y. C.P.L.R. § 302(a)(2), which grants this Court personal jurisdiction by acts of a non-domiciliary if the non-domiciliary commits a tortious act within the state of New York.  (FAC ¶ 16.)  Plaintiffs also claim that exercising jurisdiction would be consistent with constitutional due process.  (ECF No. 74 at 11-13.)  SWG counters that, as a California corporation with its principal place of business in California (FAC ¶ 7), it lacks contacts with New York, and thus this Court cannot exercise personal jurisdiction over SWG.  (ECF No. 77 at 2.)

Even if Plaintiffs sufficiently allege "tortious acts" by SWG in their FAC, Plaintiffs do not allege that Pallares or any SWG employee was physically present in New York when such

acts occurred.  (*See generally* FAC.)  Thus, Plaintiffs are barred from asserting personal jurisdiction over SWG pursuant to § 302(a)(2) based on physical presence.  *See Thackurdeen v. Duke Univ.*, No. 15-CV-3082, 660 F. App'x 43, 46 (2nd Cir. 2016) (summary order) (quoting *Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) ("[W]e have 'held that a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2).'").

Plaintiffs do allege, however, that Manhattan Bookkeepers and its employees took tortious actions while physically present in New York State, and personal jurisdiction under Section 302(a)(2) may be predicated on acts taken by an agent.  New York "[c]ourts have defined 'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators."  *Chrysler Cap. Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).  Therefore, "[t]he New York activities of a 'co-conspirator' may also be imputed to an out-of-state defendant for purposes of personal jurisdiction under § 302(a)(2) under an agency rationale."  *Shpak v. Curtis*, No. 10-CV-818, 2011 WL 4460605, at *8 (E.D.N.Y. Sept. 26, 2011).

To establish jurisdiction on the basis of a conspiracy, a plaintiff must "make a *prima facie* showing of a conspiracy and allege specific facts warranting the inference that the defendants were members of the conspiracy."  *First Cap. Inv. Holdings LLC v. Wilson Cap. Grp.*, 10-CV-2948, 2010 WL 4967833, at *2 (S.D.N.Y. Nov. 30, 2010) (citing *Chrysler Cap.*, 778 F. Supp. at 1266).  Courts then consider whether: "(1) the out-of-state coconspirator had an awareness of the effects of the activity in New York, (2) the New York coconspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the coconspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators."  *Heinfling v. Colapinto*,

946 F. Supp. 260, 265 (S.D.N.Y. 1996)).  The Second Circuit has held that "[t]he third requirement—that the New York-based co-conspirators acted at the direction or under the control of the out-of-state defendant—may be satisfied by an allegation that the out-of-state defendant was 'aware of the torts being committed by' co-conspirators in New York."  *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 127 (2d Cir. 2023) (quoting *Berkshire Bank v. Lloyds Banking Grp. plc*, No. 20-1987, 2022 WL 569819, at *3 (2d Cir. Feb. 25, 2022) (summary order).

Even assuming that Plaintiffs can make a *prima facie* showing of conspiracy, Plaintiffs have not shown that any conspiratorial acts may be imputed to SWG for jurisdictional purposes.

First, Plaintiffs argue that SWG's alleged wrongdoing necessarily had an impact in New York sufficient to establish personal jurisdiction.  (ECF No. 74 at 14.)  Plaintiffs, however, have not plausibly alleged—and cannot plausibly allege—that SWG or Pallares was aware that Manhattan Bookkeepers' allegedly tortious conduct would have effects in New York.  Plaintiffs assert that "at least 21 (twenty-one) months of fraudulent payments were made to Pearce while she herself was a resident of New York."  (*Id.*)  The FAC, however, alleges that MGPG hired SWG and Pallares in March 2021 (FAC ¶ 37), nearly one year after Pearce moved from New York to Nevada.  Accordingly, any allegedly fraudulent payments made while Pearce resided in New York necessarily predated SWG's alleged involvement in the conspiracy.  Moreover, to the extent that the FAC alleges that the relevant tortious acts occurred after Pearce relocated to Nevada—asserting that Defendants formed a plan "to create in April 2023 the compensation/'commission' statements" (FAC ¶ 41)—that allegation likewise fails to support personal jurisdiction.  Because Pearce moved to Nevada in 2020, SWG and Pallares would have had no reason to believe that any alleged tortious conduct would have effects in New York.  *C.f.*

7

*LaChapelle v. Torres*, 1 F. Supp. 3d 163, 171 (S.D.N.Y. 2014) (finding personal jurisdiction where the defendant knew the plaintiff was based in New York and that the misappropriated data and computers were located there).

Moreover, imputation of a co-conspirator's New York contacts requires a showing that SWG, through Pallares, was "aware of the torts being committed by coconspirators in New York." *Fat Brands*, 75 F.4th at 127. Here, Plaintiffs allege no facts suggesting that SWG or Pallares was aware that Kyle Morris, Michael Hoover, or Michelle Hoover took any actions in New York. To the contrary, Pallares declares that, to the best of his knowledge, neither Kyle Morris nor Michael Hoover was in New York at the time of his contacts with them and that, as alleged in the FAC, both are residents of Pennsylvania. (ECF No. 34 ("Pallares Decl.") ¶ 10.) Pallares further states that he does not believe he has ever spoken with Michelle Hoover. (*Id.*) Plaintiffs' failure to allege awareness that any torts were being committed in New York— combined with Pallares's declaration—defeats Plaintiffs' assertion of personal jurisdiction. *Compare Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 1952027, at *14 (S.D.N.Y. Jul. 16, 2025) (rejecting jurisdiction under § 302(a)(2) where plaintiff failed to allege defendants' awareness that an alleged co-conspirator was in New York and defendants submitted declarations stating they believed the co-conspirator was in California) *with Dixon v. Mack*, 507 F. Supp. 345, 351 (S.D.N.Y. 1980) (finding jurisdiction where defendant "knew that prior overt acts in furtherance of the conspiracy had taken place in New York").

"Because there is no statutory basis for personal jurisdiction over [SWG], the Court need not reach the question of whether the exercise of jurisdiction comports with due process." *Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, No. 16-CV-4254, 2017 WL 5905574, at *10 (S.D.N.Y. Nov. 29, 2017); *see also NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 354

8

(S.D.N.Y. 2020) ("Because jurisdiction is lacking under New York law, the Court need not address whether it would be consistent with federal due process requirements.").  This Court simply may not exercise personal jurisdiction over SWG.

## IV.    Conclusion

For the foregoing reasons, SWG's motion to dismiss for lack of personal jurisdiction is GRANTED pursuant to Rule 12(b)(2), and Plaintiffs' claims against SWG are dismissed without prejudice to refiling in a forum that can exercise personal jurisdiction over SWG.

As this order resolves all remaining claims in this case, the Clerk of Court is directed to enter judgment of dismissal, terminate the motion at ECF No. 63, and close this case.

SO ORDERED.

Dated:  February 17, 2026
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge

9